## MINNEHAHA NAT. BANK OF SIOUX FALLS v. TORREY *et al.*

In an action on a note, defendant testified that he had informed the president of plaintiff bank that he could get the money to pay his indebtedness by going to California for about six weeks; that the president said he would be glad if he would, and promised, in that event, to give up all notes, and give a deed to property securing them; that he promised to extend the notes, and wait till defendant got home; that he said the note in question was past due, but the interest was paid, and it would be all right, and he would take his money on that and those that were not due, and give a deed, when defendant returned; and that the understanding was that he would extend that note if defendant would pay all the others. *Held* not sufficient evidence of an extension to go to the jury. HANEY, J., dissenting.

(Opinion filed Dec. 13, 1897.)

Appeal from circuit court, Minnehaha county. Hon. J. W. JONES, Judge.

Action by the Minnehaha National Bank of Sioux Falls against H. C. Torrey and others. Defendant Torrey had judgment and plaintiff appeals. Reversed.

The facts are stated in the opinion.

*Aikens, Bailey & Voorhees,* for appellant.

There is no sufficient evidence of a contract for extension. Jones v. Matthieson, 2 Dak. 523; Buttz v. Colton, 6 Id. 307; Barnard & Leas Mfg. Co. v. Galloway *et al.*, 5 S. D. 205; 58 N. W. 565. There is no sufficient evidence of authority on the part of the president of appellant bank to enter into a contract or agreement of extension binding upon it, either by express authority, by custom or by ratification. Hodges v. Bank, 22 Gratt. 51; 1 Morse on Banks and Banking (3d Ed.) § 143–157; Thompson v. McKee 5 Dak., 176; Brower v. Appleby, 1 Sandf. 158; Bank v. Jones, 8 Pet. 12; Spyker v. Spence, 8 Ala., 333; North Star B. & S. Co. v. Stebbins, 2 S. D. 80. The agreement relied upon by respondent is within the statute of frauds. Sec. 3544, Comp. Laws; Norton v. Webb., 35 Maine (5 Red.) 218; Colman v. Packard, 16 Mass. 39; 8 Am. & Eng. Encyc. of Law, 697 and notes; §§ 229, 231, 267, Browne on Stat. of Frauds.

*Hosmer H. Keith* and *E. H. Wilson,* for respondent.

CORSON, P. J. This is an action to recover $1,800 claimed by the plaintiff to be due upon a promissory note executed by the defendants Torrey and Wilson. Judgment was entered in favor of the defendant Torrey, and the plaintiff appeals. Torrey, who was the only defendant served and who appeared in the action, filed a separate answer, denying each and every allegation of the complaint not thereinafter admitted, and pleaded that the time for the payment of the note had been extended, and it was not, therefore, due at the time the action was commenced. At the trial the plaintiff objected to the in-

troduction of any evidence under the answer, except so far as it might sustain the general denial, upon the ground, among others, "that no valid contract for an extension of the note in controversy is shown by the answer, and that no consideration is alleged for the giving of the extension." This objection was overruled and exception taken, but, as the question was again raised in another form, we do not deem it necessary to now determine the sufficiency of the answer. At the close of all the evidence a motion to direct a verdict was made upon the grounds stated in the objection to the evidence, and upon the further ground that no valid contract for an extension of the time had been proven. This motion was overruled, and exception taken. The question, therefore, presented is, was there sufficient evidence of a valid contract for an extension to be submitted to the jury? The defendant Torrey was the only witness on the part of the defendant who testified upon that subject, and his testimony is substantially as follows: "I had a conversation with Mr. Peck, about July 9, 1895, with reference to the notes, the description of which you have given from Exhibit 1, in the Minnehaha National Bank of Sioux Falls. I think on the 8th day of July, told I Mr. Peck that I had an opportunity to raise the money to pay all my indebtedness to the bank by going to California and Utah. He asked me how long it would take me, and I told him I did not know—perhaps six weeks. He said, 'We would be glad, then, to have you do that.' I says, 'Then you will give me up all my notes, and take and receive the money, and give me a deed of my property by the mill?' He said he would. I called on him again the next morning, and told him that I was going that afternoon, and he said, "All right," and went down Eighth street with me part way, wished me good luck, and said to write him when I got there how I was getting along and what I was doing. He said he would extend those notes, and wait until I got home. I told him I did not know certainly when I would return—probably six weeks. This $1,800 was spoken of. He

said that note was past due, but that I had paid the interest to the 1st of July, and that would be all right.   He said he would take his money on that and what was not due, and give me my deed, when I returned.   There was something said about my paying those notes that were not due.   He said that they were hard up and would be glad to take the money.   I told him I would pay those notes.   The understanding was that he would extend the $1,800 if I would pay all the others.   He said he would.   I went to California.   I relied upon that agreement made with him in going."

The learned counsel for appellant rely upon three propositions for a reversal of the judgment, namely:   (1) "There is no sufficient evidence of a contract for extension, even though it should be conceded that the president of appellant had authority to make one binding upon his principal.   (2) There is no sufficient evidence on the part of the president of appellant of authority to enter into a contract or agreement of extension binding upon it, either by express authority, by custom, or by ratification.   (3) The agreement relied upon is within the statute of frauds."   We only deem it necessary to consider the first proposition:   "Was the evidence sufficient to show a valid and binding contract for an extension of time for the payment of the note in controversy?   Giving to the evidence of Mr. Torrey the most favorable construction for him of which it is susceptible, and drawing therefrom all the inferences that the jury might properly have drawn, still we are of the opinion that no valid or binding agreement for an extension on the part of the bank was shown.   The elements of certainty, mutuality and consideration necessary to constitute a valid agreement for an extension of time, are wanting.   It is contended by the learned counsel for the respondent that the making of the trip to Utah and California constituted a sufficient consideration for the agreement.   This might be true if the bank had agreed that, upon the condition that Torrey would make the trip, it would extend the time of payment of the notes.   But the evidence

discloses no such agreement. While there appears to have been, according to the evidence of Torrey, cosiderable conversation between him and Peck, it seems not to have resulted in any definite agreement. Torrey says, in summing up the result of the conversation: "The understanding was that he [Peck] would extend the $1,800 note if I would pay all the others." Torrey nowhere states or intimates that the bank extended the time in consideration that he would go to Utah and California, and make an effort to raise the money to pay off all the notes. Certainly there was nothing said by Peck that can be construed as a binding agreement on the part of the bank to extend the time. Neither Torrey nor the bank made any agreement binding upon either. Torrey did not agree to either go to Utah or California or pay the notes before their maturity. The bank made no binding agreement to extend the time. It is true Peck said he would accept the money on the notes, and that the $1,800 note "would be all right." But the difficulty is the parties never came to any definite agreement that could be enforced in law by either party. It lacked the binding force of a contract as between parties. The most satisfactory test, as to whether or not there was a valid contract for an extension of time, is as to whether or not the purported agreement is such as would have discharged a surety in case there had been one to the note in controversy. We doubt if it could be seriously claimed that the evidence in this case discloses an agreement that would have discharged a surety. Our conclusions are that the evidence failed to establish a valid and binding contract of extension, and that the court should have directed a verdict for the plaintiff. The judgment of the court below is reversed, and the court is directed to enter judgment for the plaintiff for the amount due on this note.

HANEY, J., dissenting.

Rehearing denied March 16, 1898,